NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-352

COMMONWEALTH

vs.

NICHOLAS C. PILALAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a jury of second-degree murder,[1] the defendant, Nicholas C. Pilalas, appeals from the denial of his motion for a new trial. He contends that the attorney who handled his direct appeal (appellate counsel) was ineffective for not having raised a claim that the prosecutor misstated the law of self-defense in her closing argument when she repeatedly referred to the defendant's failure to "retreat" from a dispute on a public street. We agree that the comments were susceptible to interpretation as an incorrect statement of law, but because the trial judge gave a thorough and correct curative instruction, to which trial defense counsel did not object, we conclude that

---

[1] The defendant was also convicted of two counts of assault and battery by means of a dangerous weapon, and one count of assault and battery.

they did not give rise to a substantial risk of a miscarriage of justice. Thus, appellate counsel's failure to raise a claim of prosecutorial misconduct did not deprive the defendant of an available and substantial ground of defense by omitting a significant and obvious appellate issue which may have entitled him to relief. We affirm.

Background. The facts are set forth in detail in Commonwealth v. Pilalas, 91 Mass. App. Ct. 1132 (2017) (Pilalas I). As relevant here, the jury heard evidence that while driving his car at night, the defendant encountered a group of five young adults walking on a rural road. The defendant did not know them, but aggressively demanded an explanation for why they were there. After members of the group repeatedly asked him to leave them alone, the defendant got out of his car and confronted them, then got back in his car and started to drive away. Just then a car drove up containing three young adult males including the victim. After learning from the group that the defendant had been harassing them, the three young men in the car yelled angrily at him. The defendant became "pissed off" and returned, demanding of the three young men what their "problem" was. After the three young men repeatedly told the defendant to leave, he responded that they had no right to tell him to do so; he got out of his car, although nothing was

2

blocking its path and he could have driven away.  An altercation ensued during which the defendant fatally stabbed the victim.

During her closing argument, the prosecutor used a form of the verb "retreat" seven times.  She argued:

> "Ladies and gentlemen, you're going to also hear from the Judge as he will instruct you regarding self-defense. Plain and simple, . . . this defendant has a duty, as we all do in the state of Massachusetts, to <u>retreat</u> before using deadly force.  I think I have gone over it again and again but I'll tell you again . . . could he have <u>retreated</u>?  I ask you to go back there and think of all the times that he had to <u>retreat</u>.  Ask yourself who started this whole thing?  Who could have <u>retreated</u>?  Who, instead of <u>retreating</u>, brought a knife to a one-on-one fistfight?" (Emphases added.)

Near the end of her closing, the prosecutor summarized, "I suggest to you that at the moment the defendant made every single time the decision not to go home, not to <u>retreat</u>, not to go in his running, working vehicle that was not blocked in, every time he had the opportunity to <u>retreat</u> and every time he refused" (emphases added).

Defense counsel objected, arguing that the prosecutor made "a perversion" of the law of self-defense, because the defendant had no duty to retreat from "being out on the street using obnoxiousness back and forth."  Arguing that no curative instruction could remedy that and other issues in the prosecutor's closing argument, defense counsel moved for a mistrial.  The judge denied the request for a mistrial, but noted, "I do think that the assistant district attorney at times

3

blurred the boundary between suggesting properly . . . that with some common sense on the part of the defendant the whole situation could have been avoided . . . to suggesting that there was an actual duty to retreat before it may have arisen. So I will say something curative in that respect."

During his charge, the judge instructed on self-defense from the Supreme Judicial Court's Model Jury Instructions on Homicide 19-30 (2013), as then in effect. In discussing the duty to retreat, the judge elaborated on the model instruction by adding this:

> "[I]t's up to you what evidence to accept, but there was testimony that the defendant was told on a number of occasions . . . to please leave, to please go and there was evidence that at those times the defendant's path was unobstructed . . . . There is no duty to depart from a public way, a street generally because somebody asks you to. There is no duty to leave or break off from a verbal argument. So the duty to [retreat] arises out of the necessity to avoid the use of physical combat and deadly force."

> "So whatever relevance the evidence may have in general your focus needs to be to the extent that you consider the duty to retreat, it is the duty to retreat before resorting to physical combat and the use of deadly force. What is the situation at that point in the trial is what your focus should be."

Defense counsel did not object to the jury instructions.

After trial, trial defense counsel filed a motion pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), for acquittal notwithstanding the verdict, or in the alternative for reduction of the verdict to manslaughter. In a

4

decision that another panel of this court has deemed "thoughtful and thorough," Pilalas I, 91 Mass. App. Ct. 1132, the judge denied the motion, recognizing that his power to reduce the verdict under Rule 25 (b) (2) was similar to that of the Supreme Judicial Court on review under G. L. c. 278, § 33E. The judge noted that the Supreme Judicial Court has held that "[a] fine line" distinguishes second-degree murder based on third-prong malice from involuntary manslaughter, Commonwealth v. Lyons, 444 Mass. 289, 293 (2005), and that, on similar facts (stabbing during altercation), the question whether justice required reduction of the verdict was "very close," Commonwealth v. Jones, 366 Mass. 805, 808 (1975). Stating that he considered the question in this case to be "closer still," the judge nevertheless declined to substitute his own judgment for that of the jury.

The defendant then retained appellate counsel, who filed an appeal on the merits briefing and arguing a single issue: that the judge had erred in declining to reduce the verdict. A panel of this court affirmed the conviction. Pilalas I, 91 Mass. App. Ct. at 1132.

Represented by another attorney, the defendant filed a motion for a new trial, or in the alternative for Rule 25 (b) (2) relief, arguing that appellate counsel was ineffective for raising only a "single, hopeless issue," but not the "stronger

5

arguments" that were available: that the trial prosecutor committed misconduct in her closing argument by repeatedly referring to the defendant's duty to retreat, which misstated the law, and by inserting herself into the jury's deliberative process by using the phrase "we know." In a comprehensive memorandum of decision, the trial judge denied the motion, concluding that the jury instructions cured any prejudice from the prosecutor's references to a duty to retreat, and her use of "we" would have been understood by the jurors as a colloquial suggestion to review the evidence.[2]

Discussion. Standard of review. "A motion for new trial is addressed to the sound discretion of the trial judge" (citations omitted). Commonwealth v. Jacobs, 488 Mass. 597, 600 (2021). Because the judge who ruled on the motion for new trial was also the trial judge, we extend "special deference" to his denial of the motion (citation omitted). Commonwealth v. Robertson, 88 Mass. App. Ct. 52, 59 n.14 (2015). We review the judge's decision on the "motion for a new trial for an abuse of

---

[2] The judge also denied the defendant's renewed motion for Rule 25 (b) (2) relief, again noting that this case was close, but concluding that it "is not one of those extraordinary cases where the interests of justice require the trial judge to disturb a verdict supported by the evidence." Commonwealth v. Grassie, 482 Mass. 1017, 1017 (2019). Compare Commonwealth v. Pagan, 471 Mass. 537, 542, cert. denied, 577 U.S. 1013 (2015). The defendant does not argue on appeal that the judge abused his discretion by denying the motion on this ground, and so we do not reach that issue.

discretion, meaning that we consider whether it resulted from 'a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives.'" Jacobs, supra, quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Ineffective assistance of appellate counsel. In assessing whether appellate counsel's performance deprived the defendant of his right to effective assistance of counsel, we apply the familiar standard of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974): whether that performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and "whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." In applying that standard to appellate counsel's handling of the case, "we focus on whether appellate counsel 'failed to raise a significant and obvious issue . . . which . . . may have resulted in a reversal of the conviction, or an order for a new trial.'" Commonwealth v. Aspen, 85 Mass. App. Ct. 278, 282 (2014), quoting Commonwealth v. Sowell, 34 Mass. App. Ct. 229, 232 (1993).

a. Performance of an ordinary, fallible lawyer. The trial judge concluded that the first Saferian prong was met because the issue raised by appellate counsel "was not a strong argument likely to succeed," and arguing impropriety in the prosecutor's closing argument would not have undermined, and may have

7

bolstered, the claim that a manslaughter conviction would be more consonant with justice.  We agree that the record establishes that appellate counsel's performance fell below that of an ordinary, fallible lawyer.

b.  <u>Otherwise available, substantial ground of defense</u>.  As to the second <u>Saferian</u> prong, however, the trial judge concluded that the defendant had not demonstrated prejudice from appellate counsel's failure, because an appellate challenge to the prosecutor's closing argument would not likely have resulted in reversal of the conviction or a new trial.  See <u>Aspen</u>, 85 Mass. App. Ct. at 282.

1.  <u>Prosecutor's references to defendant's duty to "retreat</u>."  As mentioned above, the trial judge recognized that the prosecutor improperly suggested that the defendant had a duty to retreat that is broader than the duty that the law imposes, by repeatedly stating in her closing argument that the defendant could have retreated at various points in his interactions with the five pedestrians and the three young men. During trial, the judge denied the defendant's motion for a mistrial, instead giving the pointed curative instruction set forth above, to which trial counsel did not object.  In ruling on the motion for new trial, the trial judge concluded that any misstatement by the prosecutor as to the law of retreat did not

influence the jury's decision to convict, particularly given the curative instruction.

The defendant asserts that we should accord "no deference" to the trial judge's assessment of the effectiveness of his own curative instruction. We are not persuaded. Unlike the trial judge, we did not have the opportunity to view how the prosecutor's argument and the judge's curative instruction affected the jurors. See Commonwealth v. Garrey, 436 Mass. 422, 435 & n.6 (2002) (judge who struck improper testimony and gave prompt curative instruction could see jurors' reactions and determine necessity of mistrial). Indeed, the fact that experienced trial counsel did not object to the judge's curative instruction is some indication that it had its intended effect. Cf. Commonwealth v. Moore, 489 Mass. 735, 754 (2022) (lack of objection to prosecutor's closing "some indication" that its tone not prejudicial [citation omitted]).

The Supreme Judicial Court's decision in Commonwealth v. Ridley, 491 Mass. 321 (2023), is instructive. In that case, the prosecutor argued in closing that a punch from the victim did not amount to reasonable provocation, because "anytime there was a fist fight, you would have the ability and the right to eviscerate someone." Id. at 328. The Supreme Judicial Court was concerned that the statement, to which that defendant did not object, was "phrased broadly enough that it could be

9

interpreted as stating that a finding of reasonable provocation is equivalent to a conclusion that the killing was justified, which is an incorrect statement of law."  Id. at 329-330. Considering the issue under the standard of G. L. c. 278, § 33E, the court concluded that no substantial likelihood of a miscarriage of justice arose, particularly because of the judge's proper instructions on voluntary manslaughter and reasonable provocation, and repeated admonitions that the judge provides the instructions of law.  Id. at 330.

Here, the judge properly instructed on self-defense, supplemented by the curative instruction set forth above.  He also told the jurors that they must follow the law as he gave it to them.  We conclude that the judge's curative instruction obviated any substantial risk of a miscarriage of justice.  See Garrey, 436 Mass. at 435.

b.  Prosecutor's inserting herself into jury's deliberative process.  The defendant also argues that in her closing argument the prosecutor inserted herself into the jury's deliberative process in two ways.  First, he contends that the prosecutor improperly used the phrase "we know" more than a dozen times when describing evidence.  For example, she said, "What do we know based on what the defendant told you, based on what every single witness told you?"

10

The trial judge, who was present, concluded that the prosecutor's use of first-person pronouns was simply a means of suggesting that the jury and the prosecutor review the evidence together, and was not improper.  Having reviewed the transcript of the prosecutor's closing argument, we agree.  See Commonwealth v. Jenkins, 458 Mass. 791, 797 (2011) ("we know that" and "let's start with" to introduce descriptions of evidence in closing not improper).  The prosecutor used the phrase "we know" to introduce summaries of the evidence, not to interject her own personal beliefs.  See Commonwealth v. Silvelo, 486 Mass. 13, 20-21 (2020) (prosecutor's phrasing, "[w]hat we do know is what [the trooper] saw" summarized trooper's testimony, not prosecutor's extraneous knowledge).

Second, the defendant argues that the prosecutor improperly used the phrase, "[p]erhaps your thought process would be a little bit different if" when referring to events that did not occur.  For example, she used that phrase to begin sentences pointing out that it may have been different had the defendant been on foot, or was prevented from leaving, or if anyone other than him had been armed.  Again, the trial judge concluded that the references were a commentary on the trial evidence.  See Silvelo, 486 Mass. at 20 (in context, no error in argument "[w]e don't know what would have happened if" trooper had reacted immediately to seeing defendant's gun rather than waiting for

11

backup).  Contrast Commonwealth v. Burts, 68 Mass. App. Ct. 684, 689 & n.2 (2007) (prosecutor improperly inserted himself into jurors' deliberative process by commenting in closing on jurors' facial expressions during defense closing).

Conclusion.  The defendant has not shown that, if appellate counsel had raised claims about the prosecutor's closing argument, "'better work might have accomplished something material for the defense.'"  Aspen, 85 Mass. App. Ct. at 280, quoting Commonwealth v. Baran, 74 Mass. App. Ct. 256, 272 (2009).  Accordingly, the trial judge did not abuse his discretion in denying the motion for new trial.

Order denying motions for new trial and to reduce the verdict affirmed.

By the Court (Vuono, Henry & Grant, JJ.[3]),

Joseph F. Stanton

Clerk

Entered:  May 12, 2023.

---

[3] The panelists are listed in order of seniority.